UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,

        NO. 2:10-cr-00009 FCD

       Plaintiff,

   v.                   MEMORANDUM AND ORDER

ANTONIO GUERRERO, FRANCISCO
GARIN,

       Defendants.
_____/

----oo0oo----

Defendants Antonio Guerrero ("Guerrero") and Francisco Garin ("Garin") (collectively, "defendants") are charged in the indictment with possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and criminal forfeiture.  This matter is before the court on defendants' (1) motion to suppress evidence seized by law enforcement officers during the search of a car on December 15, 2009 in violation of the Fourth Amendment; and (2) motion to suppress any statements made by defendants after the traffic stop in violation of the Fifth Amendment privilege against self-

1

incrimination.[1]  The United States of America (the "government")
opposes the motions.  The court held an evidentiary hearing on
December 3, 2010 and February 25, 2011.  Having reviewed the file
herein and heard the testimony of witnesses and arguments of
counsel, the court DENIES defendants' motions to suppress.

### BACKGROUND[2]

On December 15, 2011, Officer Douglas Mertz ("Mertz"), an
officer for the California Highway Patrol ("CHP") assigned to the
Criminal Apprehension Program as a K-9 handler, was monitoring
traffic on Interstate 5 after a rainstorm.  At approximately
11:30 a.m., he and his partner, Officer Todd Newman ("Newman")
were sitting in their respective patrol cars in the center divide
area of the highway just north of the Glenn County line.  Mertz
was facing southbound and monitoring traffic traveling
northbound.

The speed limit on that stretch of highway was 70 miles per
hour.  There was a break in traffic, and Mertz observed a vehicle
traveling northbound in the number two lane at an estimated speed
of 75 miles per hour.  Mertz then activated his front radar
antenna and captured the speed of the vehicle at 77 miles per
hour.[3]  As the car slowed down and passed, Mertz noticed that the

---

[1]    Defendants withdrew their Motion to Suppress statements
made by defendants at CHP headquarters.

[2]    The facts are taken from the testimony and evidence
received at the evidentiary hearing held on December 3, 2010 and
February 25, 2011.  The court finds Officer Mertz to be credible.
To the extent that Mertz's testimony conflicts with that of
defendants, the court accepts Mertz's version of the facts.

[3]    Mertz testified that, pursuant to department policy, he
tested the radar unit at the beginning and end of his shift and
that it was functioning properly at both times.

front driver and rear back windows were tinted.  He also noticed
that there was some type of object hanging from the rearview
mirror.

Mertz made a U-turn and caught up to the vehicle.  He then
pulled his patrol vehicle behind the car, activated the front
emergency lights, and conducted an enforcement stop.  Mertz
testified that the primary purpose of the stop was for the
speeding violation; however, he also had suspicions that the tint
on the windows and the item hanging from the rearview mirror
might be illegal.[4]  The vehicle yielded to the right shoulder and
stopped.  Mertz pulled his patrol car behind the vehicle.

Mertz exited his patrol car and approached the vehicle on
the right side; he made contact with the two occupants through
the right open window.  He explained that the reason for the stop
was the tinted windows and the speeding violation.  He then asked
the driver, Guerrero, for his licence and the vehicle
registration.  Mertz noted that the registered owner was
different than the name on the driver's license.  He also noted
that the address and the city on the license was different than
the address and the city on the registration.

Mertz asked the driver to exit the vehicle so he could ask
him questions regarding the discrepancies between the information
on the driver's license and on the vehicle registration.[5]

---

[4]    Mertz testified that once he approached the car after
the stop, he saw that the object hanging from the rearview mirror
was a small necklace-type object that wasn't attached to the
windshield and, as such, was not a violation.

[5]    Mertz testified that he asked him to exit the vehicle,
in part, for office safety concerns.  Specifically, he asks
drivers to step out of a vehicle during a traffic stop on a

Guerrero exited the vehicle and stood near the right front of Mertz's patrol car.  Mertz asked Guerrero who the owner of the vehicle was.  Guerrero told him that he didn't know who the owner was and that the owner was a friend of the passenger.

Mertz then reapproached the vehicle and asked the passenger, Garin, who the owner of the vehicle was.  Garin told him that he didn't know who the owner was and that the owner was a friend of the driver.  Mertz then asked Garin where he was coming from, the purpose of this trip, and the duration of his trip.  Garin responded that he and Guerrero had driven to Madera[6] to look for work, were unable to find work, had stayed in Madera for two days, and were on their way home.  Mertz spoke to both Guerrero and Garin in English; they responded in both Spanish and English.

Mertz then reapproached Guerrero and asked him where he was coming from, the purpose of this trip, and the duration of his trip.  Guerrero responded that he and Garin had driven to Madera to visit family, had stayed in Madera for eight days, and were on their way home.  Mertz did not have any further conversations with either defendant; neither defendant made any further statements.

This exchange lasted approximately two or three minutes. Based upon the inconsistencies between the information on the driver's license and on the vehicle registration as well as the inconsistencies in the answer's given by Guerrero and Garin,

---

regular basis in order to separate them from any weapons that may be in the vehicle and to eliminate the possibility of speeding away from the scene.

[6]     Madera is a town in the Central Valley of California.

4

Mertz suspected that one or both of the subjects were involved in some type of criminal activity.  Mertz requested via radio that his partner, Newman, respond to the location of the traffic stop. He also contacted the CHP dispatch center and requested a registration check on the vehicle.  It took Newman approximately two minutes to arrive at the scene, where Mertz briefed him about what had transpired since the traffic stop.  Around the same time, Sergeant Greg Ross ("Ross"), who had been driving through the area and heard the dispatch on the radio, pulled behind Newman's car.

Mertz reapproached the vehicle and asked Garin to exit the vehicle.  He then escorted both Garin and Guerrero to the rear portion of his patrol vehicle.  Mertz testified that he escorted defendants to this location in preparation of getting his dog out of the car; he didn't want defendants standing right next to his dog for safety purposes.  Newman stood next to defendants.

Mertz retrieved his dog on leash, walked to the vehicle, and began walking the dog around the vehicle in a counterclockwise direction from the right rear corner of the vehicle.  As the dog reached the right rear wheel well, he showed a distinct change of behavior, which Mertz recognized as the sign of alert.  As Mertz continued around the vehicle to the back trunk area, the dog again showed a distinct change of behavior in the left trunk seam area.  Mertz then opened the passenger door of the vehicle, took his dog off the leash, and deployed the dog to the side of the vehicle.  The dog jumped in the back seat and began to alert at

1  the area where the seat reached the right quarter panel.[7]  Mertz
2  advised both Newman and Ross what had occurred.  Mertz also asked
3  Newman to handcuff both defendants.  This was approximately ten
4  minutes after Mertz had effected the traffic stop of defendants.

5      Newman then retrieved his dog and deployed the dog to the
6  exterior of the vehicle.  The dog also alerted to the rear trunk
7  area of the vehicle.  Newman then opened the door of the vehicle
8  and let the dog go inside.  The dog went to the back seat and
9  began to alert at the left quarter panel.

10     Mertz then conducted a hand-search of the vehicle, beginning
11 in the rear right side by the right quarter panel.  He used his
12 hand to press in the panel, and felt metal behind the plastic
13 panel.  He then took an upholstery tool to pop out the plastic
14 panel.  Mertz then observed a trunk latch and a mechanism used to
15 seal that compartment.  He could also see numerous packages, each
16 of which appeared to be wrapped in cling wrap.  Mertz
17 subsequently searched the left quarter panel and found a similar
18 type of false compartment containing numerous packages of the
19 same size and packaging type.  Mertz later observed field tests
20 of the packages, which tested screen positive for
21 methamphetamine.

22                          **ANALYSIS**
23 **A.   Motion to Suppress Evidence**
24     The Fourth Amendment guarantees the right of citizens "to be
25 secure in their persons, houses, papers, and effects, against
26 unreasonable searched and seizures."  U.S. Const. Amend. IV; see

27 ─────────────
28     [7]   Mertz's report erroneously indicates that his dog
   alerted at the left quarter panel.

                              6

United States v. Ruckes, 586 F.3d 713, 716 (9th Cir. 2009).

However, "the Fourth Amendment's proper function is to constrain, not against all intrusions . . . but against intrusions which are not justified in the circumstances, or which are made in an improper manner." Schmerber v. California, 384 U.S. 757, 768 (1966). "The 'touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable.'" United States v. Willis, 431 F.3d 709, 714 (9th Cir. 2005) (quoting Florida v. Jimeno, 500 U.S. 248, 250 (1991)).

"Subject only to a few specifically established and well-delineated exceptions, a search is presumed to be unreasonable under the Fourth Amendment if it is not supported by probable cause and conducted pursuant to a valid search warrant." Ruckes, 586 F.3d at 716 (internal quotations and citations omitted). "When the [g]overnment does not meet the warrant requirement, it has the burden of proving that the departure from this requirement was justified." United States v. Gardner, 627 F.2d 906, 909 (9th Cir. 1980).

**1.    Traffic Stop**

Defendants argue that all evidence seized and statements made by defendants by the side of the highway should be suppressed because there was insufficient probable cause or reasonable suspicion for the traffic enforcement stop of the vehicle. Specifically, defendants contend that Guerrero was not

driving in excess of the speed limit[8] and that Mertz pulled

defendants over "solely on a pretextual basis" based upon their

ethnicity[9] and the out of state license plates on the vehicle.

The protections of the Fourth Amendment "extend to brief

investigatory stops of persons or vehicles that fall short of

traditional arrest." United States v. Arvizu, 534 U.S. 266, 273

(2002).  The Fourth Amendment permits an officer to conduct a

traffic stop "if there is reasonable suspicion to conclude that a

traffic violation occurred." Willis, 431 F.3d at 714-15; see

Whren v. United States, 517 U.S. 806 (1996) (holding that if

officers have probable cause to believe that a traffic violation

occurred, the officers may conduct a traffic stop even if the

stop serves some other purpose).

In this case, the court finds that there was sufficient

reasonable suspicion that a traffic violation had occurred to

justify the traffic stop.  Specifically, Officer Mertz testified

that he visually observed defendants' vehicle traveling at a

speed in excess of the 70 mile per hour speed limit under rainy

conditions.  He confirmed this observation with a reading from

his stationary radar unit that the vehicle was traveling 77 miles

---

[8]     The court notes that defendant Guerrero testified that
he knew the vehicle was not exceeding the speed limit because he
was checking the car's speedometer.  However, both defendants
also testified that they did not know whether the speedometer was
accurate.

[9]     There is no evidence that Mertz could identify the race
or ethnicity of defendants prior to the traffic stop.
Accordingly, this contention is wholly unsupported.

per hour.[10]   Further, Officer Mertz also observed tinted windows

and a small ornament hanging from the rearview window that, prior

to the stop, he believed might have been violations.[11]   Because

the court finds Officer Mertz's testimony credible, the court

concludes that there was reasonable suspicion that a traffic

violation occurred and thus, that there was a reasonable basis to

conduct a traffic stop.   Therefore, defendants' motion to

suppress evidence on this basis is DENIED.

## 2.  Brief, Investigatory Stop

Defendants also argue that all evidence should be suppressed

because defendants were held for an unreasonable length of time

without a reasonable basis for an extended detention.

Under <u>Terry v. Ohio</u> and its progeny, the Fourth Amendment

allows police to conduct a brief, investigatory search or

seizure, so long as they have a reasonable, articulable suspicion

that justifies their action.   There is "no bright line rule for

determining when an investigatory stop crosses the line and

---

[10]   Defense counsel also vigorously cross-examined Mertz
regarding the accuracy of his radar unit.   Mertz testified that,
in accordance with department policy, he tested the accuracy of
the radar unit at both the beginning and end of his shift and
that the unit was functioning normally.   Defendants failed to
raise any issue that the radar unit was inaccurate.   However,
under the facts of this case, even if defendants were able to
demonstrate that the radar unit reading was in error, Mertz still
had a reasonable suspicion that the vehicle was speeding at the
time he stopped defendants.

[11]   The observation and confirmation of the vehicle's speed
were, by themselves, sufficient probable cause to conduct a
traffic stop.   However, at the time of the stop, Mertz also had
probable cause to believe that there may have been other traffic
violations based on the tint of the windows and the ornament
hanging from the rearview mirror.   That those circumstances may
have been subsequently determined not to constitute violations
does not render Mertz's suspicion unreasonable.

becomes an arrest." <u>United States v. Parr</u>, 843 F.2d 1228, 1231

(9th Cir. 1988).   Rather, whether a police detention is an arrest

or an investigatory stop is a fact-specific inquiry that requires

the court to consider all the circumstances between the

individual and the police.   <u>United States v. Torres-Sanchez</u>, 83

F.3d 1123, 1127 (9th Cir. 1996).   The court considers (1) the

extent to which a person's liberty of movement is curtailed; and

(2) the type of force or authority employed.   <u>Id.</u>

       There is no rigid time limitation on Terry stops.   <u>United</u>

<u>States v. Sharpe</u>, 470 U.S. 675, 685 (1985).   Indeed, in order for

the investigatory purposes of Terry to be served, the police must

under certain circumstance be able to detain the individual for

longer than the brief time period involved in <u>Terry</u>.   <u>Michigan v.</u>

<u>Summers</u>, 452 U.S. 692, 700 n.12 (1981).   In assessing whether the

length of a stop exceeds the permissible time limitations for a

<u>Terry</u> stop, the court considers whether the officers "diligently

pursued a means of investigation that was likely to confirm or

dispel their suspicions quickly, during which time it was

necessary to detain the suspect." <u>Torres-Sanchez</u>, 83 F.3d at

1129.

       The dispositive question is whether the methods used by the

police were reasonable under the specific circumstances.

<u>Gallegos v. City of Los Angeles</u>, 308 F.3d 987, 991 (9th Cir.

2002); <u>Torres Sanchez</u>, 83 F.3d at 1127 (holding that courts must

determine whether the stop was "reasonably related in scope to

the circumstances which justified the interference in the first

place").

/////

1    In this case, the court concludes that there was reasonable

2  suspicion to conduct the brief detention of defendants before

3  they were handcuffed.  Once the vehicle was stopped and Officer

4  Mertz asked for a drivers' license and registration, the

5  discrepancies between the name and address on the license and the

6  name and address on the registration came to light.  When Officer

7  Mertz inquired into the ownership of the vehicle, defendants

8  Garin and Guerrero had inconsistent stories.  Defendants also had

9  inconsistent stories regarding the purpose and duration of their

10  stay in Madera.  Based upon his training and experience, the

11  apparent attempts of both defendants to distance themselves from

12  ownership of the vehicle as well as the inconsistencies relating

13  to the purpose and duration of the trip made Mertz suspicious

14  that one or both defendants were involved in some type of

15  criminal activity.  Accordingly, Mertz requested a registration

16  check on the vehicle to ensure that it wasn't stolen.

17  Accordingly, Officer Mertz had reasonable suspicion to briefly

18  detain defendants.

19    There is no evidence that the manner of detention was

20  unreasonable under the circumstances.  There is no evidence that

21  officer "used no threats of force, . . . exaggerated displays of

22  authority or other coercive tactics."  See Torres-Sanchez, 83

23  F.3d at 1129.  Rather, the testimony of all witnesses at the

24  evidentiary hearing was consistent that defendants willingly

25  complied with Mertz's requests.  Indeed, defendant Guerrero

26  testified when Mertz asked him to get out of the car, he felt he

27  could choose to remain in the car or get out.  Mertz also

28  testified that he subsequently asked both Garin and Guerrero to

move behind his patrol car prior to conducting the exterior K9

search for safety reasons.   Prior to the K-9's alert at the

interior of the car, defendants were not placed in handcuffs or

in the patrol car.   Moreover, there is no evidence that Mertz

ever physically touched defendants.

Further, the length of the investigatory stop was reasonable

under the circumstances.   Mertz testified that from the time he

pulled over the car until the time defendants were handcuffed,

approximately ten minutes had elapsed.   The only stagnant time

period was the approximately two minutes that elapsed when he was

waiting for Newman to arrive as back-up; as such, there is no

evidence that Mertz unnecessarily delayed the brief

investigation.   See Torres-Sanchez, 83 F.3d at 1129; cf. United

States v. Motley, 344 Fed. Appx. 445 (9th Cir. 2009) (holding

that a 30 minute delay between time officer completed independent

investigation and time narcotics K-9 arrived violated the

defendant's Fourth Amendment rights).   Mertz also testified that

the entire stop took approximately the same amount of time it

would take to stop a car and issue a traffic citation.   See

Illinois v. Caballes, 543 U.S. 405, 405 (2005) (holding that the

time it took to conduct an exterior dog sniff did not violate the

defendant's Fourth Amendment rights when the duration of the stop

was justified by the traffic offense and the ordinary inquiries

incident to such a stop).

Accordingly, under the totality of the circumstances, the

court concludes that Officer Mertz's conduct was a reasonable

investigatory stop made in an attempt to dispel or confirm his

suspicions of criminal activity; the brief detention never rose

1 to the level of a de facto arrest.  Therefore, defendants' motion

2 to suppress evidence on this basis is DENIED.

3      **3.   Search of the Vehicle**

4     Defendants also move to suppress evidence seized from the

5 search of the car on the basis that there was insufficient

6 probable cause to search the interior of the car.

7     Use of a well-trained narcotics detection dog to perform a

8 "sniff" of the exterior of a car during a traffic stop does not

9 implicate any legitimate Fourth Amendment privacy interests.

10 <u>Caballes</u>, 543 U.S. at 409.  If a drug detection dog alerts for

11 the presence of illegal narcotics, that alert provides probable

12 cause to conduct a warrantless search pursuant to the automobile

13 exception[12] to the warrant requirement.  <u>United States v. Garcia</u>,

14 205 F.3d 1182, 1187 (9th Cir. 2000) (citing <u>United States v.</u>

15 <u>Ross</u>, 456 U.S. 798, 807 (1982)).

16     In this case, Mertz's K-9 alerted to the presence of

17 narcotics during an exterior sniff of the vehicle; this provided

18 sufficient probable cause for the interior search of the

19 vehicle.[13]  Approximately six minutes after the traffic stop and

20 after defendants gave inconsistent statements regarding ownership

21

22    [12]   Pursuant to the automobile exception to the warrant
requirement, police officers who have stopped an automobile

23 legitimately and who have probable cause to believe that
contraband is concealed somewhere within it may conduct a

24 warrantless search of the vehicle.  <u>United States v. Garcia</u>, 205
F.3d 1182, 1187 (9th Cir. 2000).

25    [13]   Defendants assert that Mertz conducted a search of the
car by poking the interior of the car with a forked end of a

26 metal rod prior to the use of his K-9.  However, the credible
evidence produced at the hearing does not support this version of

27 the facts.  Indeed, contrary to the representations made in
defendants' moving papers, defendant Garin testified that Mertz

28 went in the car *after* he walked the dog around the exterior.

of the vehicle and the purpose and duration of their trip, Mertz
deployed his dog to the exterior of the vehicle.  The K-9 alerted
to the exterior of the car by the right rear wheel well and in
the left trunk seam area.  This constituted sufficient probable
cause to allow the search the interior of the vehicle by the K-9
and then by Mertz.

Because the court finds Officer Mertz's testimony credible,
the court concludes that the K-9 alert during the exterior sniff
of the car provided probable cause to search the car.  Therefore,
defendants' motion to suppress evidence on this basis is DENIED.

**B.   Motion to Suppress Statements**

"In Miranda v. Arizona, the Supreme Court held that
statements that are not the product of interrogation not preceded
by appropriate warnings are inadmissible, where the accused was
questioned while 'in custody or otherwise deprived of his freedom
of action in a significant way.'" United States v. Beraun-Panez,
812 F.2d 578, 580 (9th Cir. 1987) (quoting Miranda, 384 U.S. at
444).  In the Ninth Circuit, a person is "in custody" for
purposes of Miranda "when, based upon a review of all pertinent
facts, 'a reasonable innocent person in such circumstances would
conclude that after brief questioning he or she would not be free
to leave.'" United States v. Wauneka, 770 F.2d 1434, 1438 (9th
Cir. 1985) (quoting United States v. Booth, 669 F.2d 1231, 1235
(9th Cir. 1981)).  This inquiry is measured by an objective
standard.  Beraun-Panez, 812 F.2d at 580.  Moreover, the
interpretation of "custody" under Miranda has been "narrowly
circumscribed." United States v. Nieblas, 115 F.3d 703, 705 (9th
Cir. 1997).  "To determine whether an individual was in custody,

14

a court must, after examining all of the circumstances surrounding the interrogation, decide 'whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." <u>United States v. Kim</u>, 292 F.3d 969, 973 (9th Cir. 2002) (quoting <u>Stansbury v. California</u>, 511 U.S. 318, 322 (1994)).

Because, as set forth above, the court concludes that, under the totality of the circumstances, Officer Mertz's conduct was a brief, investigatory stop and not a de facto arrest, Miranda warnings were not necessary. <u>See</u> <u>Torres-Sanchez</u>, 83 F.3d at 1130 (noting that because the defendant was not under arrest, Miranda warnings were not necessary). While the evidence demonstrates that defendants were detained, there is insufficient evidence that they were in custody, such that their Miranda rights would be implicated.[14]

Therefore, defendants' motion to suppress statements made during the traffic stop is DENIED.

**CONCLUSION**

For the foregoing reasons, defendants' motions to suppress are DENIED. The matter is set for a further status conference on April 4, 2011 at 10:00 a.m. Time is excluded under T-4.

IT IS SO ORDERED.

DATED: March 17, 2011

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

[14]   Moreover, it is undisputed that after defendants were handcuffed, Mertz did not have a conversation with either defendant and neither defendant made any further statements until they arrived at CHP headquarters.